IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TRENDTEX FABRICS, LTD., | CIVIL NO. 16-00318 KJM (Copyright) |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION** |
| HULA BATIK INTERNATIONAL INC. (dba HULA BATIK APPAREL), | |
| Defendant. | |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION.................................................................. 1

II. BACKGROUND.................................................................. 1

III. LEGAL STANDARD........................................................... 6

  A. Temporary Restraining Order.................................. 6

  B. *Ex Parte* Seizure Order........................................ 7

IV. DISCUSSION. ..................................................................... 9

  A. Trendtex Has Justified Excusal of Rule 65's Notice Requirement.......................................................... 9

  B. Trendtex Meets the Four-Factor Standard for a TRO. ....... 15

    1. Likelihood of Success on the Merits. ................. 15

    2. Likelihood of Irreparable Harm. ....................... 16

    3. Balance of Hardships Weighs in Favor of Trendtex.................................................... 17

    4. Public Interest........................................... 18

    5. Trendtex's Proposed Bond is Appropriate............. 18

  C. Trendtex Sets Forth Facts Justifying a Seizure Order. ....... 18

  D. Plaintiff's Counsel is an Adequate Substitute Custodian. ..... 20

  E. Plaintiff Demonstrates the Requisite Good Cause to Justify Expedited Discovery. ..................................... 20

V. CONCLUSION. ................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alliance for Wild Rockies v Cottrell*,
    622 F.3d 1045 (9th Cir. 2010), *rev'd on other grounds*, 632 F.3d
    1127 (9th Cir. 2011) .................................................................................................. 7

*Am. LegalNet, Inc. v. Davis*,
    673 F.Supp.2d 1063 (C.D. Cal. 2009) ................................................................... 21

*Berster Technologies, LLC v. Christmas*,
    2012 WL 33031 (E.D. Ca. Jan. 6, 2012) ......................................................... 17, 18

*Data East USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988) ................................................................................. 15

*Doe v. Reed*,
    586 F.3d 671 (9th Cir. 2009) ................................................................................... 6

*Flexible Lifeline Solutions v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ................................................................................. 15

*Frontline Med Assocs., Inc v. Coventry Healthcare Worker's Comp.
    Inc.*,
    620 F.Supp 2d 1109 (C.D. Cal. 2009) .................................................................... 6

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers
    Local No. 70 of Alameda Cnty.*,
    415 U.S. 423 (1974) ................................................................................................ 9

*Gucci America, Inc. v. Los Altos Boots, Inc.*,
    2014 WL 12561613 (C.D. Ca. Aug. 27, 2014) ....................................... 11, 14, 19

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ........................................................................... 15, 16

*In re Lorillard Tobacco Co.*,
    370 F.3d 982 (9th Cir. 2004) ................................................................................... 9

*Lorillard Tobacco Co. v. Bisan Food Corp.*,
  377 F.3d 313 (3d Cir. 2004) ................................................................ 10, 11

*Moose Toys Pty Ltd. v. Thriftway Hylan Blvd. Drug Corp.*,
  2015 WL 4772173 (E.D.N.Y. Aug. 6, 2015) ..................................... 11, 12

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
  737 F.Supp. 1521 (S.D. Cal. 1989) ............................................................ 20

*Reno Air Racing Ass'n. Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) .......................................................... 10, 14

*Rovio Entm't Ltd.*, 907 F.Supp.2d at 1099 ................................................. 21

*SATA GmbH & Co. Kg v. Wenzhou New Century Intern., Ltd.*,
  2015 WL 6680807 (C.D. Cal. Oct. 19, 2015) ............................................. 11

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ................................................................ 21

*Trendtex Fabrics, Ltd. v. Chad Jung Kim (dba Tropical Group)*,
  Civil No. 13-00480, 2014 WL 1326546 (D. Haw. March 10, 2014) ........... 1, 3, 4

*Trendtex Fabrics, Ltd. v. Chad Jung Kim (dba Tropical Group), Jung Gyun Kim*,
  Civil No. 13-00253, 2013 WL 5947027 (D. Haw. Nov. 5, 2013) ............. 3, 4, 13

*Matter of Vuitton et Fils S.A.*,
  606 F.2d 1 (2d Cir. 1979) ............................................................................ 11

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................... 7

## STATUTES

15 U.S.C. § 1114 .......................................................................................... 8, 18

15 U.S.C. § 1116(d)(1)(A) ................................................................................ 8

15 U.S.C. § 1116(d)(2) ......................................................................... 7, 10, 19

15 U.S.C. §§ 1116(d)(2), (4)(A) ....................................................................... 8

15 U.S.C. § 1116(d)(4)(B) ........................................................................ 9, 18

15 U.S.C. § 1116(d)(4)(B)(i) ......................................................................... 18

15 U.S.C. § 1116(d)(4)(B)(ii) ........................................................................ 19

15 U.S.C. § 1116(d)(4)(B)(iii) ....................................................................... 19

15 U.S.C. § 1116(d)(4)(B)(iv) ....................................................................... 19

15 U.S.C. § 1116(d)(4)(B)(v) and (vii) ......................................................... 19

15 U.S.C. § 1116(d)(4)(B)(vi) ....................................................................... 19

15 U.S.C. § 1116(d)(4)(B)(vii) ...................................................................... 10

15 U.S.C. § 1116(d)(5) ............................................................................. 8, 19

17 U.S.C. § 410(c) ......................................................................................... 15

17 U.S.C. § 502(a) ......................................................................................... 15

17 U.S.C. § 503(a) ........................................................................................... 7

17 U.S.C. § 503(a)(1)(A), and (a)(1)(C) ......................................................... 7

25 U.S.C. § 1116(d)(7) .................................................................................. 20

Prioritizing Resources and Organization Act of 2008, Public Law 110-
403 (Oct. 13, 2008), Section 503(a)(3) ............................................... 7, 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 65(b)(1) ................................................................................... 9

Fed. R. Civ. P. 65(c) ...................................................................................... 18

Fed. R. Civ. P. 65(f) ........................................................................................ 7

Rule 65 ....................................................................................................... 7, 12

Rule 65(b) ........................................................................................... 6, 9, 14

## MEMORANDUM IN SUPPORT OF MOTION

## I.     INTRODUCTION.

Plaintiff TRENDTEX FABRICS, LTD. ("*Plaintiff*" or "*Trendtex*"),

by and through its attorneys, submits this memorandum in support of its *Ex Parte*

Application For (1) Temporary Restraining Order, Seizure Order, and (2) Order to

Show Cause For Preliminary Injunction and For Expedited Discovery (the

"*Application*"), submitted with Plaintiff's Proposed Order.

## II.    BACKGROUND.

Since at least as early as 2000, Trendtex has designed or

commissioned artists to create unique designs for its fabric goods, and has invested

substantial amounts to do so.  Many of its fabrics bearing these designs are sold to

aloha wear garment manufacturers in the State of Hawaii on an exclusive basis.

*See* attached Declaration of Donna Hamai (the "*Hamai Dec.*") at ¶ 3.

As alleged in this lawsuit, Defendant Hula Batik has infringed on four

of Trendtex's copyrighted fabric designs (the "*Copyrighted Designs*"), which have

been copied without Trendtex's authorization or permission, and in identical or

substantially identical form, into low quality, "knock-off" clothing goods imported,

distributed, and sold by Defendant.  The Copyrighted Designs were assigned by

the artists to Trendtex and were registered by Trendtex under the following U.S.

Copyright Registrations:

1

| Registration No. | Date of Registration | Title | Fabric Design No. and Name | Attached as Exhibit: |
|---|---|---|---|---|
| VAu 550-113 | May 1, 2002 | Eichi Hosomi - March 2002 Collection | EH-20373 Hibiscus Design | "A" |
| VAu 572-118 | February 10, 2003 | Eichi Hosomi - December 2001 Collection | EH-L223R Orchid Design | "B" |
| VAu 602-329 | November 28, 2003 | Eichi Hosomi - October 2003 Collection | EH-3E08R Vintage Ceres | "C" |
| Va 1-859-099 | February 7, 2013 | Studio Figlio - LL-031R2 | LL-031R2 Panel Hibiscus | "D" |

Attached as Exhibits "A" - "D" are copies of the U.S. Copyright Office's certifications of these copyright registrations and deposit material. Each of the copyright registrations was obtained before or within five years of the first sale or publication of referenced fabric design. Hamai Dec. at ¶¶ 4 - 5. Copies of the artists' assignments to Trendtex of the copyright rights in and to the Copyrighted Designs are attached as Exhibits "E" - "H," respectively. Id. at ¶ 5.

Defendant sells the "knock-off" goods to retailers who would have otherwise purchased goods from Trendtex's wholesalers, distributors, and other customers. Samples of these garments bear labels and/or hang tags with the name, "HULA BATIK." The garments are easily moved or hidden, as in many cases, the "knock-off" garments bearing "HULA BATIK" hang tags have been seen for sale at the Aloha Stadium swap meet or at cart vendors in Waikiki. Hamai Dec. at ¶ 7.

2

Trendtex recently became aware that Defendant Hula Batik has been importing, distributing, and/or selling garments in the State of Hawaii made with fabric bearing certain copyrighted designs of Trendtex -- the Vintage Ceres Design and Panel Hibiscus Design alleged in Plaintiff's Second Amended Complaint For Copyright Infringement filed on April 4, 2017 [Dkt. No. 39]. These two copyrighted designs are particularly notable because they have been among Plaintiff's best-selling fabric designs — until recently when sales to Trendtex's customers of fabric bearing the designs completely stopped — and are among the designs that were the subject of two prior copyright infringement actions filed against CHAD JUNG KIM (dba Tropical Group) (*"Chad Kim"*). *See Trendtex Fabrics, Ltd. v. Chad Jung Kim (dba Tropical Group), Jung Gyun Kim*, Civil No. 13-00253, 2013 WL 5947027 (D. Haw. Nov. 5, 2013) (Order Adopting Magistrate Judge's Amended Findings and Recommendation re Vintage Ceres Design, among others); *Trendtex Fabrics, Ltd. v. Chad Jung Kim (dba Tropical Group),* Civil No. 13-00480, 2014 WL 1326546 (D. Haw. March 10, 2014) (Findings and Recommendations of Magistrate Judge re Panel Hibiscus Design) and 2014 WL 1326552 (D. Haw. Mar. 31, 2014) (Order Adopting Magistrate Judge's Findings and Recommendation). Copies of the orders entered by the Court are attached as Exhibits "L" - "N." On November 20, 2013, in Civil No. 13-00253, the Court also

entered a Judgment against Defendants Chad Jung Kim (dba Tropical Group) and Jung Gyun Kim (dba Aloha Noa), a copy of which is attached as Exhibit "O."

Trendtex incurred several thousands of dollars pursuing these two prior copyright infringement cases against Chad Kim, which resulted in injunction orders and a judgment enjoining Chad Kim, his agents, servants, employees, and affiliates, *and all other persons and/or entities acting in concert with them*, from infringing on the Vintage Ceres Design and Panel Hibiscus Design, among others. These prior injunction orders and judgment also ordered that Chad Kim deliver to the Court for impoundment all infringing materials and materials which may be used to infringe that were in his possession or control. *See* Exhibits "L" and "M." at 2013 WL 5947027 at *9, 2014 WL 1326546 at *8.

In an attempt to evade these orders and judgment, Chad Kim filed a Chapter 7 bankruptcy petition on June 18, 2014, seven months after entry of the order and judgment in Civil No. 13-00253, and three months after the order in Civil No. 13-00480. During the creditors' meeting on October 7, 2014, Chad Kim testified that he sold his clothing inventory at the swap meet as soon as he picked the items up from his source, and that he had "nothing" -- *viz.* he failed to deliver infringing items to the Court in compliance with the impoundment orders and also failed to stop selling them, per the injunction orders. S*ee* Debtor Chad Jung Kim's Response in Opposition to Creditor Trendtex Fabric Ltd.'s Objection to Debtor's

Claimed Exemption For Clothing Inventory attached as Exhibit "T" and Transcript of Audiotaped Proceedings attached as Exhibit "U," at 10:10-13; 10:14-25, 11:1-14; 12:3-14.

As described in more detail in the attached declarations, Chad Kim's history of refusing to comply with this Court's prior orders and the ease by which he seems to be able to move and distribute the infringing inventory is important because, as Trendtex has discovered recently, Chad Kim is working closely with Defendant Hula Batik. He has been identified at the warehouse location of Hula Batik, and his cell number even shows up on shipping documents as the contact number for containers of clothing goods imported from Indonesia, to be received by Hula Batik. *See e.g.* attached Declaration of Elise B. Johnson, Hamai Dec. at ¶¶ 12 - 13, and Exhibits "I" and "J." If, as it appears from the above, that: (a) Chad Kim is working with Defendant Hula Batik and Boo Duck Kang to import, distribute, and/or sell various garments and/or fabric in the State of Hawaii; and (b) Hula Batik is importing, distributing, and selling infringing garments bearing the Vintage Ceres Design and the Panel Hibiscus Design that the Court addressed in the prior injunction orders, then not only is Chad Kim violating the prior injunction orders but so are Defendant Hula Batik and Boo Duck Kang in that they are acting in concert with Chad Kim. This history of violations of the Court's orders and disposing of evidence that is easily moved and hidden justifies the

5

*ex parte* relief requested by Plaintiff.  Consistent with this apparent strategy to

dispose of the evidence, Hula Batik has failed to produce documents requested in

discovery, and its counsel has failed to either follow up on the settlement

discussions or to even respond to requests by Trendtex's counsel to meet and

confer regarding the discovery issue.  *See* attached Declaration of Counsel

("***Counsel's Dec.***") at ¶¶ 14-16 and Exhibits "Z" - "BB."

## III.   LEGAL STANDARD.

### A.   Temporary Restraining Order.

Rule 65(b) governs the issuance of temporary restraining orders.

Fed. R. Civ. P. 65(b).  A temporary restraining order may issue only if the movant

provides specific facts in an affidavit that clearly show immediate and irreparable

injury will result absent the order.  *Id.*  The standard for a temporary restraining

order is identical to the standard for a preliminary injunction.  *Frontline Med*

*Assocs., Inc v. Coventry Healthcare Worker's Comp. Inc.*, 620 F.Supp 2d 1109,

1110 (C.D. Cal. 2009).  A plaintiff seeking preliminary relief must establish

"[1] that he is likely to succeed on the merits, [2] that he is likely to suffer

irreparable harm in the absence of preliminary relief, [3] that the balance of

equities tips in his favor, and [4] that an injunction is in the public interest."  *Doe v.*

*Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def.*

*Council, Inc., 555 U.S. 7, 20 (2008)).*  The elements of this four-factor test are

"balanced, so that a stronger showing of one element may offset a weaker showing

of another." *Alliance for Wild Rockies v Cottrell*, 622 F.3d 1045, 1049-50 (9th Cir.

2010), *rev'd on other grounds*, 632 F.3d 1127 (9th Cir. 2011).

Thus, a court may grant temporary relief where a plaintiff

demonstrates "that serious questions going to the merits were raised and the

balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1052.  Generally, a

temporary restraining order is considered to be "an extraordinary remedy that may

only be awarded upon a clear showing that the plaintiff is entitled to such relief."

*Winter*, 555 U S. at 22.  Where justified, Rule 65 specifically applies to copyright

impoundment proceedings. Fed. R. Civ. P. 65(f).

> **B.   *Ex Parte* Seizure Order.**

Similarly, Section 503(a) of the Copyright Act, 17 U.S.C. § 503(a),

authorizes a court to order seizure and impoundment of "all copies . . . claimed to

have been made or used in violation of the copyright owner's exclusive rights" and

"records documenting the manufacture, sale, or receipt of things involved in any

such violation . . .". 17 U.S.C. § 503(a)(1)(A), and (a)(1)(C).  Pursuant to the

Prioritizing Resources and Organization Act of 2008, Public Law 110-403

(Oct. 13, 2008), Section 503(a)(3) was amended to provide that the procedures

allowing for *ex parte* applications to seize and impound counterfeit goods under

the Trademark Act, 15 U.S.C. § 1116(d)(2)-(11), apply in a copyright infringement

case, and that references in the trademark provisions of this section shall be read as references to copyright infringement.  17 U.S.C. § 503(a)(3).

In an action arising out of the use of counterfeit trademarks (and since the 2008 amendments, in a case involving copyright infringement), the Court may, "upon ex parte action, grant an order . . . providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt or things involved in such violation." 15 U.S.C. § 1116(d)(1)(A).  The applicant must provide reasonable notice to the United States Attorney in the judicial district and post a bond in support of any seizure order that issues.  15 U.S.C. §§ 1116(d)(2), (4)(A). The application must set forth facts showing compliance with the procedural requirements of 15 U.S.C. § 1116(d)(5).

Thus, the Court may issue a seizure order if it clearly appears from specific facts that:  (1) an order other than an ex parte seizure order is inadequate to achieve the purposes of 15 U.S.C. § 1114; (2) "the applicant has not publicized the requested seizure"; (3) the applicant is likely to succeed in showing that the defendant used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods; (4) an immediate and irreparable injury will occur in the absence of seizure; (5) "the matter to be seized will be located at the place identified in the application"; (6) the harm to the applicant if the application is

8

denied outweighs the harm to the defendant's legitimate interests if it is granted; and (7) the defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court" if the applicant provided notice. 15 U.S.C. § 1116(d)(4)(B). An ex parte seizure order is "an extraordinary mechanism for pre-notice seizure of allegedly infringing goods." *In re Lorillard Tobacco Co.*, 370 F.3d 982, 989 (9th Cir. 2004). Accordingly, a failure to satisfy any of the seven elements prohibits immediate seizure. *Id.*

## IV.   DISCUSSION.

### A.   Trendtex Has Justified Excusal of Rule 65's Notice Requirement.

In general, courts may issue TROs without notice to the opposing party only if:  (1) specific facts show that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The Supreme Court has held that ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39 (1974) (internal citation omitted).

9

"Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n. Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An ex parte TRO is generally only appropriate where (1) notice would be impossible because the party is not known or cannot be located, or (2) notice would render further prosecution fruitless. *Id.* With regard to the latter, ex parte issuance of a TRO may be appropriate in a trademark infringement case where "an alleged infringer is likely to dispose of the infringing goods before the hearing." *Id.* This exception to the notice requirement loosely corresponds to the requirement for seizure under §1116(d) that the defendant "would destroy, move, hide, or otherwise make [the goods] inaccessible to the court" if the applicant gave notice to the defendant. 15 U.S.C. § 1116(d)(4)(B)(vii); *see also Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, 320 (3d Cir. 2004).

To justify excusal of the notice requirement on this ground, "the applicant must do more than assert that the adverse party would dispose of evidence if given notice." *Id.* (citing and quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)). The applicant "must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or

10

violating court orders or that persons similar to the adverse party have such a history." *Id.* (citing and quoting *First Tech.*, 11 F.3d at 650-51). Nevertheless, there are occasions where notice should be excused, as rendering further prosecution fruitless "is surely not what the authors of the rule either anticipated or intended" in drafting the notice requirement. *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979). *See e.g. Gucci America, Inc. v. Los Altos Boots, Inc.*, 2014 WL 12561613 at *4 (C.D. Ca. Aug. 27, 2014) (granting *ex parte* application for TRO and seizure order where, among other things, Defendant could easily hide counterfeit goods and was aware activity could be found to be infringing); *SATA GmbH & Co. Kg v. Wenzhou New Century Intern., Ltd.*, 2015 WL 6680807 at *1, *4 (C.D. Cal. Oct. 19, 2015) (granting *ex parte* application for TRO and seizure order); *Moose Toys Pty Ltd. v. Thriftway Hylan Blvd. Drug Corp.*, 2015 WL 4772173 *1, *4 (E.D.N.Y. Aug. 6, 2015) (granting *ex parte* application for TRO and seizure order and holding that, "[w]hile the likelihood that a defendant would destroy, conceal, or transfer counterfeit goods depends on the specific facts of each case, some guiding principles can be derived . . . . Courts have looked to, *inter alia*, the scope of the counterfeiting alleged, the nature of the business engaged in the counterfeiting and whether it is a fixed location or more of a 'fly-by-night' operation, and any demonstrated pattern by the defendant of trying to avoid detection, refusing to cease and desist, or refusing to comply with court orders").

In this case, it is apparent that Defendant Hula Batik will "move, hide, or otherwise make [the infringing goods] inaccessible," so that notice should be excused for purposes of a Rule 65 temporary restraining order. The infringing goods consist of garments that are made from fabric bearing identical or nearly identical copyrighted designs. *See* Hamai Dec. at 4. Defendant's goods have been seen on sale at the Aloha Stadium swap meet and at cart vendors in Waikiki, and as such, they are easily moved or hidden, as are related electronic or paper records. *Id.* at 6-7. Defendant is well aware that its distribution and sale of the garments infringes Trendtex's copyright rights, as Trendtex's First Amended Complaint [Dkt. No. 17] and Second Amended Complaint [Dkt. No. 39] allege. Based on the fact that Hula Batik has been acting in concert or active participation with Chad Kim, Hula Batik is also aware that: (a) Trendtex has been claiming that he has been distributing and selling clothing bearing at least two of the Copyrighted Designs at issue in this case; (b) that injunction orders, impoundment orders, and a judgment were previously entered against Chad Kim, as well as "all persons and/or entities acting in concert with" him or with his agents, servants, employees, and affiliates, *see e.g.* attached Exhibits "L" - "O;" and (3) that although Chad Kim might claim the discharge order in his Chapter 7 bankruptcy proceeding somehow blunted the impact of these orders and judgment against him, the proceeding could not have relieved Hula Batik from having to comply.

12

In view of Hula Batik's refusal now to comply with these orders, as well as its apparent refusal to cease and desist and turn over infringing clothing, *see* Counsel's Dec. at 14, Defendant Hula Batik is continuing to sell the infringing clothing during the pendency of the litigation, after which Hula Batik will either dissolve or otherwise position itself so that Trendtex is left with an empty judgment. Chad Kim's Chapter 7 bankruptcy proceeding supports a finding that Hula Batik will similarly attempt to "render fruitless further prosecution of the action," so that *ex parte* relief is justified.

Even if Defendant Hula Batik itself has not had any history of destroying evidence or violating court orders, Chad Kim's history is evidence that similarly situated parties in infringement cases have ignored orders to preserve evidence. As described above, the Court previously ordered, in the two prior copyright infringement actions against him, that the infringing clothing goods bearing the Trendtex Copyrighted Designs be delivered to the Court for impoundment. *See* Counsel's Dec. at 2-4. For instance, on November 4, 2013, the Court ordered Chad Kim to deliver to the Court for impoundment all materials in his possession or control that were alleged to infringe. *See Trendtex Fabrics Ltd. v. Chad Jung Kim, et al.*, Civil No. 13-00253, 2013 WL 5947027 at *9 (D. Haw. November 5, 2013), a copy of which is attached as Exhibit "L." However, Chad Kim did not deliver the infringing materials to the Court, *see* Counsel's Dec. at 4.

13

To the contrary, Chad Kim testified in the bankruptcy proceeding that he had instead disposed of his clothing inventory. Chad Kim testified at the creditor's meeting on or about October 7, 2014, and his attorney confirmed, that: (a) Chad Kim's business involved selling clothing and other items at the swap meet, and (b) Chad Kim failed to deliver the infringing material with the Court pursuant to the impoundment orders and, instead, had disposed of the inventory. *See* Debtor Chad Jung Kim's Response in Opposition to Creditor Trendtex Fabric Ltd.'s Objection to Debtor's Claimed Exemption For Clothing Inventory attached as Exhibit "T" and Transcript of Audiotaped Proceedings attached as Exhibit "U," at 10:10-13; 10:14-25, 11:1-14; 12:3-14.

The pattern of conduct engaged in by Chad Kim as a person at least similarly situated to Hula Batik if not a person acting in concert with Hula Batik, shows that further prosecution of this action will likely be fruitless, and therefore, *ex parte* relief is justified. *See Gucci America*, 2014 WL 1256163 at *4 ("Nevertheless Gucci has shown that persons similar to Defendant have such a history [of disposing of evidence or violating court orders]. . . . Accordingly, Gucci has satisfied its burden under *Reno Air*, justifying excusal of Rule 65's notice requirement.").

14

**B.     Trendtex Meets the Four-Factor Standard for a TRO.**

1.     Likelihood of Success on the Merits.

The Copyright Act gives a district court the authority to grant

injunctions to prevent or restrain copyright infringement. *See Flexible Lifeline*

*Solutions v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011); 17 U.S.C.

§ 502(a).  To establish copyright infringements, a plaintiff must prove two

elements: "(1) ownership of a valid copyright, and (2) copying of constituent

elements of the work that are original." *See L.A. Printex Industries, Inc. v.*

*Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).  The certificates of

registration constitute *prima facie* evidence of ownership under these

circumstances.  17 U.S.C. § 410(c).  As shown by the attached certified copies of

the U.S. Copyright Registrations, *see* Exhibits "A" - "D," the assignments of the

copyright rights, *see* Exhibits "E" - "H," and the fact that each copyright was

registered before or within five years of its first sale or publication, *See* Hamai

Dec. at 4, Trendtex is the owner of valid copyrights in the Copyrighted Designs at

issue in this action.

Defendant's copying may be shown by direct evidence of copying, or

by circumstantial evidence "through a combination of access to the copyrighted

work and substantial similarity between the copyrighted work and the accused

product." *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988).

15

Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a "chain of events" linking the plaintiff's work and the defendant's access, or (2) "widespread dissemination" of the plaintiff's work. *L.A. Printex Industries, Inc.*, 676 F.3d at 846-847. Here, under the access plus substantial similarity test, Defendant's copying is evident because (1) Trendtex and Defendant Hula Batik operate in the same industry and in the same Honolulu area, *see* Hamai Dec. at 15,; (2) the Vintage Ceres Design and Panel Hibiscus Designs are among the most popular of Trendtex's designs, and have been sold to local fabricators and reprinted at least 17 times prior to Defendant's infringement, where each printing consisted of several thousand yards of fabric, *id.*,; and (3) perhaps most tellingly, Chad Kim was found to have infringed and copied these very same designs, and has evidently worked closely with Defendant Hula Batik. *See L.A. Printex Industries, Inc.*, 676 F.3d at 848. Chad Kim's access, copying, and infringement, as determined in the prior cases, evidences Hula Batik's access, copying, and infringement. On balance, therefore, there is at least a likelihood of Trendtex's success on the merits.

## 2.   Likelihood of Irreparable Harm.

Trendtex must demonstrate that it is likely to suffer irreparable harm in the absence of a TRO. Lost or damaged goodwill, lost business, lost business opportunities, and the inability to use intellectual property completely are types or

indicia of intangible injury constituting irreparable harm for purposes of a preliminary injunction. *See Berster Technologies, LLC v. Christmas*, 2012 WL 33031, at *10 (E.D. Ca. Jan. 6, 2012) (granting motion for preliminary injunction on copyright infringement claims, among other claims).

      Here, it is apparent that Trendtex will suffer irreparable harm in view of the loss of business that has occurred, and the complaints of its customers with regard to the specific Copyright Designs that are at issue in this action. *See* Hamai Dec. at 6-8. If this were not enough, the fact that Chad Kim filed for Chapter 7 bankruptcy protection after the two prior copyright infringement orders were entered, and his apparent involvement with Hula Batik, demonstrate that a monetary judgment for damages is unlikely to provide any remedy.

      3.   <u>Balance of Hardships Weighs in Favor of Trendtex.</u>

      Trendtex has invested substantial time and money in designing and commissioning artists to create the Copyrighted Designs. *See* Hamai Dec. at 3. If Hula Batik continues to sell-off infringing garments, Trendtex will continue to suffer irreparable harm to its goodwill, market share, and sales. On the other hand, the only plausible hardship to Defendant if the Court issues the requested TRO is a loss of profits. The Ninth Circuit has stated, however, that "a defendant who knowingly infringes another's copyright 'cannot complain of the harm that will befall it when properly forced to desist from its infringing activities'." *Berster*

17

*Technologies, LLC v. Christmas*, 2012 WL 33031, at *11 (citing *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997)).

     4.   Public Interest.

The public interest is served by the issuance of an injunction that upholds copyright protections and thus prevents " 'the misappropriation of skills, creative energies, and resources which are invested in the protected work.' " *Id.*

     5.   Trendtex's Proposed Bond is Appropriate.

A TRO must be accompanied by payment of a bond. Fed. R. Civ. P. 65(c). Trendtex requests that the Court set a bond in the amount of $15,000.00. This amount is appropriate in light of the amount and lower quality of the knock-off goods in Defendant's possession.

**C.    Trendtex Sets Forth Facts Justifying a Seizure Order.**

Trendtex has met the seven requirements for an *ex parte* seizure order under 15 U.S.C. § 1116(d)(4)(B). First, Trendtex has established that an *ex parte* seizure order is the only remedy adequate to achieve the purposes of 15 U.S.C. § 1114. *See* 15 U.S.C. § 1116(d)(4)(B)(i). The evidence of similarly situated defendants (Chad Kim) in analogous infringement cases (the two prior copyright infringement actions before this Court) with a history of disposing infringing goods and refusing to comply with court orders to preserve evidence, indicates that absent an *ex parte* seizure order, Defendant, too, will destroy or conceal the knock-off

clothing items and thereby hinder Trendtex's ability to protect its rights. *See Gucci America*, 2014 WL 12561613 at *8. Based on Trendtex's purchases of goods bearing "Hula Batik" hang tags and labels, and the identity of the knock-off fabric designs and the Copyrighted Designs, Trendtex is likely to show that Defendant has used an infringing design in connection with the sale of goods. 15 U.S.C. § 1116(d)(4)(B)(iii). In addition, Trendtex has not publicized the requested seizure, per 15 U.S.C. § 1116(d)(4)(B)(ii). *See* Hamai Dec. at 16.

In addition, and as shown above, Trendtex will suffer immediate and irreparable injury to its reputation and goodwill if the seizure order does not issue. 15 U.S.C. § 1116(d)(4)(B)(iv). The balance of hardships also weighs in favor of Trendtex, as Defendant's continuing use of the Trendtex Copyrighted Designs is unauthorized, infringes on Trendtex's rights, and thus not legitimate. 15 U.S.C. § 1116(d)(4)(B)(vi). For the same reasons that an *ex parte* seizure order is the only adequate remedy under the circumstances, Defendant or persons acting in concert with it (Chad Kim) would "destroy, move, [or] hide" the goods located at the warehouse or otherwise render the infringing items inaccessible to the Court, if Trendtex were to proceed on notice. 15 U.S.C. § 1116(d)(4)(B)(v) and (vii).

Trendtex's *Ex Parte* Application and Proposed Order set forth sufficient facts to comply with the procedural requirements of 15 U.S.C. § 1116(d)(5) and 15 U.S.C. § 1116(d)(2) (notice to the U.S. Attorney for this

judicial district).  Accordingly, Trendtex submits that issuance of an *ex parte*

seizure order per the attached Proposed Order is justified, necessary, and

appropriate.

> **D.     Plaintiff's Counsel is an Adequate Substitute Custodian.**

Under 25 U.S.C. § 1116(d)(7), materials seized "shall be taken into

the custody of the court."  Nevertheless, courts issuing seizure orders pursuant to

this authority in the past have appointed a substitute custodian to hold the seized

goods in custody in place of the court or the defendant.  *See Reebok Int'l, Ltd. v.*

*Marnatech Enters., Inc.*, 737 F.Supp. 1521, 1525 (S.D. Cal. 1989) (finding

appointment of plaintiffs' agent as substitute custodian did not violate defendants'

rights where protective order limited plaintiffs' access to the records).

The Court finds that Plaintiff's counsel, Cades Schutte LLP, is an

appropriate substitute custodian.  This finding is based in part on the protections

pursuant to 15 U.S.C. § 1116(d)(7), which are incorporated into the Proposed

Order.

> **E.     Plaintiff Demonstrates the Requisite Good Cause**
> **to Justify Expedited Discovery.**

As of this date, Defendant has not produced the documents it stated in

its discovery responses are available, nor has Defendant's counsel responded to

requests for the documents or even a meet-and-confer date.  *See* Counsel Dec. at

20

¶¶ 15-16, Exhibits "AA" - "BB."  Courts employ the "good cause" standard to determine whether expedited discovery is warranted. *Rovio Entm't Ltd.*, 907 F.Supp.2d at 1099.  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  Courts may consider the following factors when determining whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009) (internal quotations omitted).

Plaintiff's purpose for requesting the expedited discovery demonstrates the requisite good cause. The results of Plaintiff's investigation suggest that Plaintiff needs to ascertain Defendant's sources of the knock-off clothing goods without delay and to learn of any pending shipments or shipments of the goods en route.  Additionally, as detailed in the Proposed Order the discovery requested is narrowly tailored to obtain information relevant and "essential" for the preliminary injunction.

21

## V.   CONCLUSION.

For the reasons set forth above, Trendtex respectfully requests that its

Application be granted.

DATED:  Honolulu, Hawaii, April 21, 2017.

CADES SCHUTTE LLP
A Limited Liability Law Partnership


MARTIN E. HSIA
COLIN O. MIWA

Attorneys for Plaintiff
TRENDTEX FABRICS, LTD.

ImanageDB:3911741.1

22